IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-02745-CNS-NRN

BECCI STARR and
SCOTT MATTES,

Plaintiffs,

v.

USAA CASUALTY INSURANCE COMPANY (USAA CIC)

Defendants.

---

**ORDER ON PLAINTIFFS' MOTION FOR ENTRY OF PROTECTIVE ORDER
(ECF No. 71)**

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This matter comes before the Court on Plaintiffs Becci Starr and Scott Mattes's

Motion for Entry of Protective Order (the "Motion"), ECF No. 71, filed December 2, 2024.

The Motion was filed after the Court held a discovery hearing on November 8, 2024 and

ordered briefing on the question of whether, during discovery, Defendant USAA

Casualty Insurance Company ("USAA") may elicit additional information or evidence on

which it did not previously rely to explain its delay in approving insurance benefits. *See*

ECF No. 50. The issue was supposed to be to what extent the doctrine articulated in

*Schultz v. GEICO Cas. Co.*, 429 P.3d 844 (Colo. 2018) should bar portions USAA's

requested discovery. USAA filed its response on January 6, 2025. ECF No. 85. On

January 27, 2025, Plaintiffs filed a reply in support of the Motion. ECF No. 89.

The Parties then informed the Court that they would be participating in a mediation, first set for March 11, 2025, and later rescheduled to April 8, 2025. *See* ECF Nos. 90, 94. Because of the Court's hope that the mediation would be successful, the Court declined to rule on the Motion. On April 28, 2025, the Parties informed the Court that the mediation had failed and that discovery is to proceed. The Parties now desire a ruling on the Motion to provide guidance as to scope of discovery to come.

In connection with the Motion, the Parties have submitted Plaintiffs' responses to USAA's various interrogatory requests and requests for production of documents. *See, e.g.*, ECF No. 71-2 (Plaintiffs' Third Amended and Second Supplemental Responses to Defendant's First Set of Written Discovery Requests to Plaintiffs). These are the discovery requests and responses that have prompted the present controversy. Plaintiffs also submitted a notice of supplemental authority, ECF No. 98, providing the Court with a citation to *Uhl v. Progressive Direct Insurance Co.*, 2025 WL 460941, 23-cv-01904-NYW-SBP (D. Colo. February 11, 2025).

It is hereby **ORDERED** that the Motion is **GRANTED IN PART** and **DENIED IN PART** as set forth below.

## I.    Background

Plaintiffs made an insurance claim for water damage to their Colorado home from a pipe that burst while they were vacationing in Mexico in March 2022. Plaintiffs allege numerous delays by USAA in investigating and paying the claim and have filed suit against USAA for breach of contract, common law bad faith, and violations of Colo. Rev. Stat. §§ 10-3-1115 and 1116.

2

USAA eventually paid Plaintiffs' entire claim by issuing payments of $317,650.06 in benefits for repairs to the house and $82,779.75 in benefits for Plaintiffs' loss of use or for additional living expenses. Plaintiffs seek no additional payments in terms of contractual insurance benefits for the loss. *See* ECF No. 31 at 6 (Scheduling Order, Undisputed Facts). Thus, the issues for litigation are limited to whether USAA unreasonably delayed investigating and ultimately paying the benefits that were issued, or, instead, whether USAA conducted a reasonable investigation into an admittedly complicated claim before ultimately making payment in a reasonable time.

As an example of the complexity in the case, Mr. Mattes decided to act as his own general contractor and USAA questions whether delays in repairing the property were attributable not to USAA but to Mr. Mattes's management of the project. There was a further question as to whether USAA should have had to pay for profit and overhead above subcontractor invoices for Mr. Mattes's role as a general contractor. Although USAA ultimately paid for profit and overhead, presumably there was some delay associated with investigating this relatively unusual situation where an insured requests that he be paid profit and overhead for repairs on his own home.

In addition, one of USAA's defenses is that Plaintiffs may have failed to fulfil the conditions precedent to coverage under the policy, including failing to timely submit documentation and information requested by USAA. To the extent that Plaintiffs failed to submit timely documentation or responses to USAA's inquiries, those failures may have caused delays which Plaintiffs now assert are the fault of USAA. *See id.* at 5 (Scheduling Order, Defendant's Defenses).

Plaintiffs purport to have identified at least 22 distinct delays in the processing or payment of their claim. They seek damages of at least $20 million statutory penalties and, perhaps, up to $1 billion in noneconomic losses. *See* ECF No. 71-2 at 65 (Plaintiffs' Second Supplemental Discovery Responses). Plaintiffs' theory appears to be that because they can identify 22 distinct unreasonable delays or denials of a covered benefit, they are entitled to 22 times $800,859.62 (twice the benefits to which they are entitled under the policy), which equals $17,618,91.60. *Id.* at 68.

From the submissions of the Parties, the Court identifies several issues, some of which go beyond the scope of the application of *Schultz v. GEICO*. One important question is whether USAA is entitled to seek discovery about whether the claim is covered under the policy. But USAA has paid all the benefits requested and has done so without reserving any rights. Plaintiffs therefore argue, not without some basis, that issues going to coverage, such as the cause of the pipe bursting (allegedly a window was left open during cold weather) and other events leading up to the submission of the claim to USAA are, at this point, irrelevant to what will ultimately be decided at trial: whether USAA unreasonably delayed payment.

USAA also claims that Plaintiffs' discovery responses are vague and fail to provide the requested information. For example, Plaintiffs have not spelled out with any specificity the supposed 22 instances of unreasonable delay, and USAA asks that Plaintiffs be required, for each alleged instance of delay, to specify: "the date of the alleged delay, the amount claimed to have been delayed, the date on which they claim the benefits should have been paid, and all facts known to date supporting those contentions." ECF No. 85 at 16. USAA also takes issue with Plaintiffs' constant referral

to USAA's claim file, rather than providing their own recitation as to what happened over the course of the claim.

USAA has helpfully winnowed its list of requests and interrogatories to which it seeks a response, *see* ECF No. 85-5, and the Court will address each of the requested areas below.

## II.    Application of *Schultz v. GEICO*

Plaintiffs argue that *Schultz* stands for the proposition that "[i]nsurers are prohibited from using discovery to create new evidence to support earlier delays in paying benefits, or other coverage decisions." ECF No. 71 at 1. I am not sure that is exactly what *Schultz* stands for. Later in the Motion, Plaintiffs put it slightly differently, suggesting the issue is the following: "When an insurer never disputes coverage, pays benefits without a reservation of rights or raising any defenses and is sued for bad faith due because of delays in the claim, is the insurer permitted to use discovery to create new evidence to attempt to argue it might not have owed the benefits, so the delays are justified?" *Id.* at 3.

*Schultz* involved an insurer who initially declined to pay an injury claim but then, "after months of correspondence" but not requiring an independent medical examination ("IME"), offered its policy limit. 429 P.3d at 846. When the insurer was sued for common law bad faith and violations of Colo. Rev. Stat. §§ 10-3-1115 and 1116, the insurer requested an IME to support its position that causation was "fairly debatable" and, by extension, to show that its initial decision to not pay benefits was reasonable. *Id.* The issue of whether the insurer, which did not dispute coverage and had paid policy limits, was entitled to conduct an IME in the course of defending the bad faith and

unreasonable delay claims went to the Colorado Supreme Court, which held that "the reasonableness of an insurer's decision[s]. . . must be evaluated based on the information that was before the insurer at the time it made [the decisions]" and, thus, insurers cannot "create new evidence to justify a previous benefits decision." *Id.* at 848–49.

USAA says that, unlike *Schultz*, where the insurer was arguably attempting to conduct a late investigation to explain its early decision not to pay benefits, here, USAA is not attempting to generate new evidence to validate its claims decisions. Rather, the company is seeking all information needed to reconstruct the complete timeline of Plaintiffs' claim for the purpose of assessing the cause of any alleged delay, including whether any delay was caused by USAA or if other factors were at play. USAA asserts that evidence sought is critical to its defense and nothing about *Schultz* precludes the discovery as amended.

I am in general agreement that where a defendant insurer has paid full policy limits without any reservation of rights, it should be precluded from ginning up new evidence or information that might be used to argue that there is no coverage for the claim and use that as a defense in the lawsuit. From what I understand, coverage is no longer an issue in this case. But what is at issue is why it took USAA so long to conclude that the claim was covered and to pay it. It may be that there were legitimate reasons for the delay, including, for example, delays in the Plaintiffs getting requested information to USAA. Whether USAA is entitled to seek information to develop a timeline of the claim depends, I think, on the nature of the in dividual discovery requests and whether the requests might lead to discovery of admissible evidence at trial. This

means that the requests must be reviewed on an individual basis to assess relevance
and proportionality considerations.

### III.    Legal Standards

"Parties may obtain discovery regarding any nonprivileged matter that is relevant
to any party's claim or defense and proportional to the needs of the case, considering
the importance of the issues at stake in the action, the amount in controversy, the
parties' relative access to relevant information, the parties' resources, the importance of
the discovery in resolving the issues, and whether the burden or expense of the
proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Rule 401 of the
Federal Rules of Evidence defines relevant evidence as evidence that "has any
tendency to make a fact more or less probable than it would be without the evidence."
Fed. R. Evid. 401(a).

Relevance under Rule 26(b)(1) is "broadly construed," and a request is
considered relevant "if there is 'any possibility' that the information sought may be
relevant to any party's claim or defense." *Byron-Amen v. State Farm Mut. Auto. Ins. Co*.,
No. 21-cv-02364-NYW, 2022 WL 1567563, at *2 (D. Colo. May 18, 2022) (quoting
*Martensen v. Koch*, 301 F.R.D. 562, 570 (D. Colo. 2014)); *Brackett v. Walmart Inc*., No.
20-cv-01304-KLM, 2021 WL 1749975, at *3 (D. Colo. May 4, 2021) ("[R]elevance is not
so narrowly construed as to limit a story to its final chapter, and neither party is entitled
to make it impossible for all meaningful parts of the story to be told."). As for
proportionality, "[t]he Advisory Committee Notes to the 2015 Amendments make clear
that the party seeking discovery does not bear the burden of addressing all
proportionality considerations." *Carlson v. Colo. Ctr. for Reprod. Med., LLC*, 341 F.R.D.

266, 275 (D. Colo. 2022) (citing Fed. R. Civ. P. 26 advisory committee's notes to 2015

amendment"). Generally, when the requested discovery appears relevant on its face,

"the party resisting discovery has the burden to establish the lack of relevance by

demonstrating that the requested discovery (1) does not come within the scope of

relevance as defined under [Rule 26(b)(1)], or (2) is of such marginal relevance that the

potential harm occasioned by discovery would outweigh the ordinary presumption in

favor of broad disclosure." *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 359 (D. Colo.

2004) (quotation omitted).

Rule 26(b)(2)(C) allows a court to limit discovery if it determines that: (1) the

discovery sought is unreasonably cumulative or duplicative, or may be obtained from

some other source that is more convenient, less burdensome, or less expensive; (2) the

party seeking discovery has had ample opportunity to obtain the information by

discovery in the action; or (3) the proposed discovery is outside the scope permitted by

Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C)(j)–(iii). And "[t]he court may, for good cause,

issue an order to protect a party . . . from annoyance, embarrassment, oppression, or

undue burden or expense" from an otherwise relevant discovery request. Fed. R. Civ. P.

26(c)(1). The party seeking such protection "has the burden of proof[.]" *Stroup v. United

Airlines, Inc*., No. 15-cv-01389-WYD-CBS, 2016 WL 7176717, at *3 (D. Colo. Sept. 16,

2016). "The burden is on the party resisting discovery or dissemination to establish that

the information sought should be subject to additional protection. To meet this burden,

the moving party must set forth specific facts showing good cause, not simply

conclusory statements." *Netquote, Inc. v. Byrd*, No. 07-cv-00630-DME-MEH, 2007 WL

2438947, at *1 (D. Colo. Aug. 23, 2007) (citation omitted).

Finally, "[d]iscovery rulings are within the broad discretion of the trial court, and [the Tenth Circuit Court of Appeals] will not disturb them absent a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Kenno v. Colo. Governor's Off. of Info. Tech*., No. 21-1353, 2023 WL 2967692, at *7 (10th Cir. Apr. 17, 2023) (cleaned up, quoting *Cole v. Ruidoso Mun. Sch*., 43 F.3d 1373, 1386 (10th Cir. 1994)), *cert. denied*, 144 S. Ct. 696 (2024), *reh'g denied*, 144 S. Ct. 1088 (2024). *See also, S.E.C. v. Merrill Scott & Assocs., Ltd*., 600 F.3d 1262, 1271 (10th Cir. 2010) (discovery rulings are reviewed for abuse of discretion).

## IV.    Analysis

### a.  General Observations

A few general comments are in order before determining whether Plaintiffs will be required to answer (or answer further) the propounded discovery. First, Plaintiffs purport to be seeking potentially tens of millions of dollars in damages. The legal basis for this is not readily apparent but, taking Plaintiffs and their counsel at their word, this is a substantial sum of money, and such a claim justifies more discovery than would normally be proportionate to the needs of a standard UIM car wreck or roof hail damage insurance case that barely exceeds the federal jurisdictional threshold.

Second, to the extent Plaintiffs have referred in the responses they have provided to multiple other documents, including to various paragraphs of the Complaint or to the claim file, this is not appropriate or acceptable. Neither I, as a magistrate judge trying to figure out the sufficiency of a response, nor USAA, which may seek to use the sworn interrogatory answers as admissions at trial, should have search far and wide in

other cited documents for the responses to interrogatories. To the extent that the interrogatories or requests for production are to be answered, they should be answered via a coherent identifiable answer or response, without having to cross-reference multiple other documents.

Third, I am in general agreement with Plaintiffs' position that, because USAA has paid all the monetary benefits that Plaintiffs have sought pursuant, apparently without reserving any rights, USAA has effectively conceded that the benefits paid were for damages covered under the contract of insurance. An insurer should not be able to pay benefits without a reservation of rights and then, when the insured sues for unreasonable delay in obtaining the benefits, seek to litigate the validity of the underlying claim or whether the insured is entitled to benefits at all. As Judge Nina Y. Wang recently held in a very detailed and thoroughly researched opinion (one citing *Schultz*), where an insured's only claims against his insurer are extra-contractual claims for common law bad faith and statutory delay (because the contractual benefits have been paid without reservation of rights), the plaintiff's entitlement to benefits under the contract of insurance or the question of coverage, are no longer "live" issues. *Uhl*, 765 F. Supp. 3d at 1186. To be absolutely clear, to the extent that USAA is arguing that it should be entitled to explore "the cause of subject damage, and therefore, coverage—a threshold element of Plaintiffs' extra contractual claims," ECF No. 85-4 at 1, I disagree.

Accordingly, questions of coverage or the cause of the claimed damages are not directly relevant to what is at stake in this case, namely, whether USAA unreasonably delayed investigating and/or making payment to Plaintiffs. It may be that certain topics, tangentially relevant to the issue of coverage, may nevertheless touch on the question

of delay, in part because USAA was investigating the claim to determine coverage and that investigation may have taken time. But with USAA's concession that it has paid benefits without a reservation of rights, pure questions (and discovery) regarding coverage and Plaintiffs' entitlement to benefits appear to be off the table.

### b.  Disputed Interrogatories and Rulings

**Disputed Interrogatory No. 3** (as amended by Appendix A—seeking only six months of information preceding the date of the loss to today) asks Plaintiffs to:

> Identify all persons who are responsible or have ever had responsibility for or participated in the inspection or evaluation ("inspection") of any aspect of the Subject Property or Personal Contents that you allege were damaged or destroyed or that is otherwise related to your request for damages, including any interior features, fixtures, structures, or personal property with a value in excess of $500, beginning 10 years before the date you made the Subject Claim to today, including: (a) each person and state what that person's responsibility entails or entailed (e.g., inspect the Subject Property's floor; prepare estimate for floor repair, report damage to Plaintiffs, etc.); (b) the documents, agreements, estimates, or protocols describing or governing the person's responsibility to inspect, maintain, or repair the aspect Subject Property; (c) terms of such documents, agreements, estimates, or protocols; (d) the date on which the inspection occurred(s); and (e) all documents describing, discussing, mentioning, memorializing, or referencing the inspections, including, but not limited to, any expert eports, emails, correspondence, bills, or notes generated in connection with any such inspection.

**Ruling**: To the extent that Plaintiffs had anyone inspect or evaluate the real or personal property that Plaintiffs allege were damaged, they need to respond to this interrogatory. The objections are **OVERRULED**. Referring to other answers (such as "See answer to no. 2, which is incorporated herein," or "see timeline") is not acceptable. This information is relevant because, in part, it involves understanding the overall timing of the claim and any potential delays and reasons for the delays.

**Disputed Interrogatory No. 4** (as amended by Appendix A—seeking only six months of information preceding the date of the loss) ask Plaintiffs to describe:

> Any construction, repair, maintenance, change, replacement, or modification ("change") contemplated or made to any aspect of the Subject Property or Personal Contents that you allege was damaged or destroyed or that is otherwise related to your request for damages, including any interior features, fixtures, or structures, or any portion thereof, including: (a)

11

a description of each change; (b) the identity of all persons who performed or contemplated each change; (c) the dates on which each change was made or, if never made, contemplated; (d) the total cost of each change (or anticipated, if never made); and (e) all documents describing, discussing, mentioning, memorializing, or referencing the change.

**Ruling**: The objections are **OVERRULED** as to construction or repair "made to" any aspect of the subject property. Changes that were merely "contemplated" need not be described. From the date of the loss forward, Plaintiffs should answer this interrogatory. It is relevant to the issue of delay in the case or may lead to admissible evidence on the questions of delay in the case.

**Disputed Interrogatory No. 5** (as amended by Appendix A—seeking only six months of information preceding the date of the loss) asks Plaintiffs to describe:

All estimates or bids to perform any construction, repair, maintenance, change, replacement, or modification of any kind on the any aspect of the Subject Property or Personal Contents that you allege was damaged or destroyed or that is otherwise related to your request for damages, including any interior features, fixtures, or structures, or any portion thereof, including: (a) the identity of each person or entity who has submitted; (b) the date on which each estimate or bid was submitted; and (c) all documents and Communications evidencing, memorializing, discussing, mentioning, or referencing the estimate or bid.

**Ruling:** The objections are **OVERRULED**. Plaintiffs should answer this question without reference to other answers. The information is relevant. To the extent that it is true that they "do not recall any bids or estimates related to work that was contemplated or made," *see* ECF No. 71-2, they nevertheless must answer with respect to bids for construction and maintenance after the damage occurred.

**Disputed Interrogatory No. 6** asks the Plaintiffs to describe:

All insurance-benefit payments that you contend you were entitled to receive from USAA with respect to the Subject Claim, but which USAA either did not pay, or unreasonably delayed in paying, including: (a) the category of benefits to which the payment belonged; (b) the amount that you contend should have been paid; (c) the date on which you contend the payment should have been made; (d) to whom and on behalf of whom you contend the payment should have been made; and (e) the basis for your contention that each such payment was due or owing.

**Ruling**: By this interrogatory, USAA is asking Plaintiffs to identify specifically which payments were unreasonably delayed and by how long. This is captured by the question asking when Plaintiffs believe the payment should have been made and in what amount, and the reasons Plaintiff believe the payment should have been made

earlier. This is information that goes to the heart of the case and will allow USAA to prepare its defense

Plaintiffs' response, found at ECF No. 71-2, is unnecessarily complicated, confusing, and inadequate. The response "incorporates" numerous other objections, the answer to Interrogatory No. 17, and then directs the Defendant to 22 specific paragraphs of the Complaint. USAA should not have to cross-reference the Complaint to get a coherent answer to this interrogatory. Plaintiffs' objections are **OVERRULED**, and Plaintiffs are directed to answer this interrogatory with specificity and **not** by reference to the Complaint or other interrogatory answers. In addition, in responding to the question about when payment should have been made, an answer to the effect of "payment within 7 days of, and no later than 14 days of, each date Defendant became aware an amount was requested or owed; or had information available to it from which it could have determined an amount was owed seems reasonable to us," is not adequate. Obviously, USAA wants to know, and the Court believes USAA is entitled to know, the actual dates when Plaintiffs believe that they should have received the payments, or, using Plaintiffs' own terminology, when Plaintiffs believe USAA "had information available to it from which it could have determined an amount was owed."

**Disputed Interrogatory No. 7** asks for other claims or demands to other insurance companies, or other claims to USAA under other policies made both before and the leak at issue here, including the date, whether benefits were recovered and to what extent.

**Ruling**: To the extent Plaintiffs object to having to list other claims made to USAA, the objection is **SUSTAINED**; USAA should have those records. Plaintiffs further respond that USAA is the only insurer they have had, so this interrogatory is sufficiently answered.

**Disputed Interrogator No. 9** asks the Plaintiffs the following:

Regarding individuals or entities that you or anyone acting on your behalf retained, identified, recommended, or engaged to perform repairs, evaluation, mitigation, or restoration related to the Subject Claim, describe all matters, if any, separate from the Subject Claim for which you have ever retained or engaged them, including: (a) a general description of the matter; (b) the date on which you or anyone acting on your behalf have retained the company or the individual; and (c) the address of the subject location where work was performed or which was the focus of the entity's or the individual's work.

Plaintiffs say they are not withholding any responsive material and believe they have fully responded.

**Ruling**: Plaintiffs' response is inadequate. Their response only directs USAA to answers to other interrogatories. This is a specific interrogatory that asks (inartfully, it

must be admitted) whether Plaintiffs had worked on other projects with individuals or entities who worked on restoring the damage to their home. The response provides no names or other details and does not state whether they had worked with anyone before or after the subject claims. USAA is entitled to a response. The objections are **OVERRULED**, and Plaintiffs should answer without reference to any other interrogatories.

**Disputed Interrogatory No. 11** asks the Plaintiffs to:

Identify and describe what you have done with the insurance proceeds you have received from USAA to date related to the Subject Claim, including: (a) the amount of any expenditures, deposits, or investments of those proceeds; (b) the recipient(s) of the proceeds; and (c) all goods or services received in exchange for the proceeds.

Plaintiffs object generally that USAA "required estimates, invoices and other documentation to support benefit payments, so it knows what was done with proceeds. Presumably, USAA verified that the benefits USAA paid matched the invoices and other proofs of loss submitted at its request, and that it required before paying the benefits. Any complaint USAA might have about how the money was used, was waived by not raising it long ago." Plaintiffs respond specifically that "[a]ny monies received were used to pay for the damages we sustained, to pay additional living expenses, to replace damaged property or to replace the money we had to use when USAA delayed paying."

**Ruling**: Plaintiffs' response is adequate and their objection to answering further is **SUSTAINED**. It is not clear how the use of the proceeds is necessarily relevant to the issues remaining in the case.

**Disputed Interrogatory No. 12** asks Plaintiffs to:

Identify and describe all repairs, replacements, damage mitigation, restoration, modifications, and debris removal ("repairs or replacements") made to the Subject Property since the date of the Leak, including: (a) the damage to the Subject Property that was repaired or replaced; (b) when the damage was repaired or replaced; (c) who identified the damage that was the subject of making the repair or replacement; (d) the scope of the repair or replacement; (e) whether there was any discussion regarding the scope of the repair or replacement; (f) whether the damage was identified and paid for by USAA in any of its estimates; (g) who made the repair or replacement of the damage (e.g. contractor, homeowner, etc.); and (h) the cost to make the repair or replacement.

Plaintiffs object on the ground the USAA already has the information they are requesting. Plaintiffs also object to the extent USAA is seeking this information because it might have been relevant during the claim or for a determination of benefits owed.

**Ruling**: The objections are **OVERRULED**. Plaintiffs are obligated to respond. To the extent Plaintiffs are complaining about delays, this question in part seeks to understand the timeline of the repairs, who conducted the repairs, and what specific repairs were done. It is relevant and not unduly burdensome for Plaintiffs to respond, and they should do so, without reference to any other interrogatories or the Complaint.

**Disputed Interrogatory No. 13:** Asks Plaintiffs to:

Describe all steps you or anyone acting on your behalf took, if any, to mitigate the damage to the Subject Property caused by the Leak and to prevent further damage to the Subject Property including: (a) the action you took to mitigate the damage; (b) the identity of all persons who performed the action to mitigate the damages or have knowledge about such action; (c) the dates on which the action occurred; and (d) the total cost of each action taken to mitigate damage.

Plaintiffs' response in general describe the fact that Mr. Mattes flew to Boulder from Mexico for 21 days to assess the damage and secure the property. It also refers to the timeline in answer Interrogatory No. 2.

**Ruling:** The objections are **OVERRULED**. Plaintiffs should answer this question without cross-referencing any other response, including the timeline or by referring to USAA's claim record.

**Disputed Interrogatory No. 14** asks the Plaintiffs to:

Describe all damage to the Subject Property that is part of the Subject Claim, if any, that you believe, assert, or understand to have occurred after the flow of water burst pipe was discontinued, but that resulted from the flow of water ("further damage") including: (a) a summary of the further damage; (b) the date(s) when the further damage was discovered; (c) the identity of all persons who discovered the further damage; (d) whether any photographs or other documents depicting or describing the further damage exist; (e) whether the further damage was reported to USAA; and (f) if so, on what date, to whom, and how was the further damage reported to USAA.

Plaintiffs object that this interrogatory is merely asking for information that was already provided during the claim processing.

**Ruling:** The Court agrees that this appears to go more to the claim coverage than any delay and likely is already in USAA's files. Also, the relevance of "further damage" is not apparent. The objection is **SUSTAINED** and need not be responded to further.

**Disputed Interrogatory No. 16** asks Plaintiffs to identify any written or oral terms of documents relating to any contingency fee agreement Plaintiffs might have with respect to the recovery.

Plaintiffs affirmatively state that their only agreement is with their counsel and they are withholding that document.

**Ruling:** The Court agrees that Plaintiffs' agreement with their counsel is not relevant to the issues in dispute in this case. The objection is **SUSTAINED**. To the extent there were other people working on a contingency, such as appraisers, public adjusters, etc., Plaintiffs represent there is no one else with a contingent interest in the outcome of the case. No further response is required.

**Disputed Interrogatory No. 17** asks that Plaintiffs describe:

Each instance where you allege USAA caused or contributed in whole or in part to a delay in your ability to proceed with repair or restoration of the Subject Property, the restoration or replacement of Personal Contents, your attainment of alternate living arrangements, your access to policy benefits, or your ability to comply with policy terms, including: (a) a summary of the general nature of the instance, (b) all pertinent facts or circumstances surrounding the instance, (c) all documents evidencing the instance, (d) any facts or circumstances showing that you caused or contributed to the instance, (e) the date of the instance, (f) each individual or entity with knowledge of the instance, and (g) all damages you seek related to the alleged instance.

Plaintiffs' response, found at ECF No. 71-2 at 61–62, contains objections on the ground that this interrogatory is overbroad and unduly burdensome, and that the Complaint provides "provides a reasonable recitation of facts, which support the claims inquired about in this interrogatory . . . ." Plaintiffs further object that this is a "blockbuster" interrogatory. Plaintiffs also state that the Complaint "provides a reasonable recitation of facts, which support the claims inquired about in this interrogatory."

**Ruling:** Plaintiff's objections are **OVERRULED**. Plaintiffs are ordered to answer this interrogatory without reference any other interrogatory answer or the Complaint. Some of the subparts are excessive—such as "all documents evidencing the instance"—but the general interrogatory, which seeks to know each instance where Plaintiffs believe USAA caused or contributed to a delay in proceeding with a repair or restoration of the property, personal contents, the ability to obtain alternative living arrangements, or access to policy benefits, needs to be specified at least by date and surrounding circumstances so that USAA has notice of the specific delays of which it is being accused. I generally agree with USAA that the fact that USAA keeps a claim file does not relieve Plaintiffs of their discovery obligation to identify facts and documents

(which may well already be in the claim file) on which Plaintiffs will be basing their claims of unreasonable delay or denial.

**Disputed Interrogatory No. 18** asks that Plaintiffs state:

The total numerical dollar amount of damages you believe USAA should pay for the claims you have asserted in your complaint and specify a dollar amount for at least the following categories of damages:

      a)  Contractual insurance benefits;
      b)  Economic damages for insurance bad faith;
      c)  Emotional distress damages for insurance bad faith;
      d)  Inconvenience damages for insurance bad faith
      e)  Pain and suffering damages for insurance bad faith
      f)  Double benefits under C.R.S. section 10-3-1116
      g)  Attorney fees, costs, and expenses
      h)  Pre-judgment interest
      i)  Moratory interest, and
      j)  Any other category of damages

**Ruling:** Plaintiffs have lots of improper boilerplate objections to this interrogatory, including some that make no sense whatsoever, for example, "Plaintiffs object to a request that requires them to inform Defendant, in advance of trial, their arguments for calculations of noneconomic losses." To the extent Plaintiffs will be claiming damages for noneconomic losses, USAA is entitled to understand the bases for the damages claimed. In their response, Plaintiffs state that they "may ask for any amount up to $1 billion for noneconomic losses." ECF No. 71-2 at 65. If true, then Plaintiffs need to explain the basis for that astonishing number. That said (and with the exception of the $1 billion in noneconomic damages), the explanation in the response for the damages Plaintiffs will be seeking seems generally adequate. Plaintiffs need to supplement this interrogatory with an explanation of the claimed noneconomic damages.

**Disputed Interrogatory No. 19** asks the Plaintiffs to describe:

Each act or omission ("instance") you allege constitutes bad faith or a statutory violation on the part of USAA, including: (a) a summary of the general nature of the instance, (b) all pertinent facts or circumstances surrounding the instance, (c) all documents evidencing the instance, (d) any facts or circumstances showing that you caused or contributed to the instance, (e) the date of the instance, (f) each individual or entity with knowledge of the instance, (g) all damages you seek related to the alleged instance, (h) the legal basis for your allegation, including, if applicable, the particular statutory section or subsection you allege USAA violated.

Plaintiffs respond merely with a citation to the Complaint and their responses to prior interrogatories, the claim record, and their portion of the Scheduling Order.

**Ruling**: Plaintiff's response is inadequate and their objection is **OVERRULED**. Plaintiffs shall respond to this interrogatory without reference to either the Complaint or any other interrogatory response. This interrogatory seeks critical information about specific instances of bad faith by USAA. USAA is entitled to know what they are alleged to have done wrong, when they did it, and the alleged consequences (damages) resulting from those instances.

**Disputed Interrogatory No. 20 and Related Requests for Production 19 and 20** seek information regarding the window that is alleged to have dislodged resulting in the burst pipe, as well as Plaintiffs' efforts to maintain heat in the home as required by the policy. Per USAA, the "requests are relevant to coverage with is a threshold element of Plaintiff's extra-contractual claims." ECF No. 85 at 13.

In their response, Plaintiffs explain that they understand the "window was broken off at the hinges, at a time that it was very cold and windy, as a result the heating system increased its output, due to the dropping temperatures in the home, and the propane was used up at which point the heating system stopped working and that caused pipes to freeze and then break." ECF No. 71-2 at 72. They argue they have no further obligation to answer or provide responsive documents)because this is purely a bad faith case at this point, and coverage should not be an issue.

**Ruling**: The Court agrees with Plaintiffs. Because USAA eventually paid the claim without a reservation of rights, coverage is no longer an issue and this information is not relevant to USAA's defense. *See Uhl.*, 765 F.3d at 1187 (where entitlement to benefits is no longer an issue—because benefits were paid without a reservation of rights—insurer is not entitled to discovery relating to coverage). The objection is **SUSTAINED**.

**Disputed Interrogatory No. 22** asks the Plaintiffs to "[d]escribe all efforts you took to locate alternative housing or living arrangements during any periods of time you were unable to reside at the property as a result of the Subject Property as a result of the Leak."

Plaintiffs make a general response that they "did what they were told by USAA" and followed the "guidance" recommended by USAA. They supplement by reference to the timeline found in the response to Interrogatory No. 2.

**Ruling:** This information is relevant to Plaintiffs' delay claim. Plaintiffs should answer this interrogatory without reference to any other answer. The objection is **OVERRULED**.

**Disputed Interrogatory No. 23** (as amended by Appendix A) asks Plaintiffs:

Beginning 30 days prior to the date of loss through the present describe all periods of time exceeding 72 hours where neither Ms. Starr nor Mr. Mattes

were present in the State of Colorado ("absences"); including (a) the dates of the absence; (b) where you were during the absence; (c) the reason(s) for the absence; (d) any arrangements for inspections, caretaking, or visits by others during the absence; and (e) any damage that occurred to the Subject Property or personal property located at the Subject Property during the absence.

Plaintiffs object that this information is not relevant.

**Ruling**: The court disagrees with Plaintiffs. To the extent that Plaintiffs were in Mexico, after the date of the loss, this information could be relevant to delays in the claims. Plaintiffs should answer this question by providing the dates of any absences, and arrangements to monitor or inspect the property in their absence. The objection is **OVERRULED**.

**Request for Production 3** (as amended by Appendix A)**:**

Produce all Documents and Communications that mention, memorialize, discuss, summarize, or evidence any construction, repairs, replacements, restoration, damage mitigation, or modifications made to any aspect of the Subject Property that you allege was impacted or damaged by or as a result of the Leak, from 15 years before the date you made the Subject Claim to today, including, but not limited to, estimates, bids, plans, blueprints, drawings, photographs, logs, building permits, building inspection reports, certificates of occupancy, job files, requests for bids, invoices, and bills.

**Ruling**: Plaintiffs' objections are **SUSTAINED IN PART**. But, to the extent that Plaintiffs are claiming that any particular aspect of the repairs or restoration of the subject property was delayed (and to which they are seeking statutory or other damages), Plaintiffs shall identify and produce the documents listed above for those particular repairs.

**Request for Production 4** asks Plaintiffs to "[p]roduce all Documents and Communications that mention, memorialize, discuss, summarize, constitute, or evidence any inspections of the damage allegedly caused by the Leak."

**Ruling**: The documents sought by this question may be relevant to the issue of delay in the processing or payment of the claim. I note that Plaintiffs' "incorporation" of prior objections from either other interrogatories or requests for production is entirely unhelpful. This document is 101 pages long, and for a judge trying to understand both the request and the specific objection, having to cross-reference two or three objections from a prior answer is not the way the Court would like to spend its time. The objections (whatever they are) are **OVERRULED**. Plaintiffs shall produce the requested documents.

**Request for Production 5** asks Plaintiffs "to produce all Documents and Communications that support the existence or amount of items of damages alleged in your Complaint (ECF No. 3) and your Initial Disclosures, including any damages allegedly caused by USAA's handling of the Subject Claim."

**Ruling:** Plaintiffs' objections are **OVERRULED**. Of course, Plaintiffs will be supplementing with their expert reports. But to the extent standalone documents exist that support their damages claims, they should be produced. A general reference to "Plaintiffs' Initial, First, Second and Third Supplemental Disclosures," ECF No. 71-2 at 81, is not adequate. The documents need to be identified, preferably by Bates stamp.

**Request for Production 7** asks Plaintiffs to produce:

All Documents and Communications that mention, memorialize, discuss, summarize, constitute, reflect, or evidence any interest any person has or has ever had in any recovery from the Subject Claim or this Action, including, but not limited to, contracts, agreements, liens, secured loans, contingent-fee contracts, or assignments, excluding those concerning the interests of any attorneys representing you with respect to the Subject Claim or the Action.

**Ruling:** Plaintiffs say that other than their fee agreement with counsel, no such documents exist. To the extent other such documents exist, they should be produced.

**Request for Production 8** asks that Plaintiffs:

Produce all Documents and Communications that mention, memorialize, discuss, summarize, constitute, reflect, or evidence all steps, if any, you have taken to mitigate the damages to any aspect of the Subject Property that you allege was impacted or damaged by or as a result of the Leak or to prevent further damage to any aspect of the Subject Property that you allege was impacted or damaged by or as a result of the Leak.

**Ruling**: Plaintiffs say they are not withholding any documents pursuant to their objections. Arguably, this information might be tangentially relevant to the issue of delay. But since no documents are being withheld, the issue seems moot. The Court does note that Plaintiffs' response that "[a]ny such non-privileged and discoverable documents should be in Defendant's files, if relevant," ECF No. 71-2 at 83, is not proper. USAA is not required to go searching through its own claim file to locate documents Plaintiffs might use to prove that they mitigated their damages.

**Request for Production 9** seeks:

All Documents and Communications related to the Subject Claim or to this Action that mention, memorialize, discuss, summarize, constitute, or evidence conversations, communications, or dealings with USAA or its

personnel, representatives, or agents, including, without limitation, notes concerning or relating to any conversations with USAA or its personnel, representatives, or agents.

Plaintiffs object that this information is best located in the claim file or claim record.

**Ruling:** On this issue, Plaintiffs have a point that any communications, such as letters, emails, phone calls, specifically between Plaintiffs and USAA would be reflected in the claim file. However, to the extent that Plaintiffs have their *own* recordings or notes (on paper or electronically) of communications summarizing conversations or communications with USAA representatives, those materials should be produced.

**Request for Production 10** asks that Plaintiffs produce "all documents constituting, comprising, summarizing, referring to, evidencing, or mentioning any of the expenditures, deposits, or investments of the insurance proceeds received from USAA to date, including, but not limited to, documents evidencing the goods and services received in exchange for the proceeds."

**Ruling**: To the extent that Plaintiffs used the insurance proceeds money to buy material or services to repair the home, they should produce "documents evidencing the goods and services received in exchange for the proceeds."

**Request for Production 11** asks Plaintiffs to produce "all documents constituting an agreement, or if there was no formal agreement, sufficient to evidence the existence of an informal agreement, where you performed services as a general contractor related to construction, repair, or restoration of any aspect of any residential property or structure."

Plaintiffs make objections by reference to objections found in other requests.

**Ruling:** I find that documents showing that Plaintiffs agreed to act as a general contractor may be relevant to the issue of delay. Therefore, the objections are **OVERRULED**, and Plaintiffs are to produce any relevant documents.

**Request for Production 12**:

Produce all documents or communications reflecting any analysis or efforts to value the Subject Property created or generated within the last 10 years, including any reports or information related to other or comparable properties collected for the purposes of evaluating the value or marketability of the Subject Property. This request, as do all requests, seeks discovery of any history that may be stored on a computer or mobile device.

**Ruling:** Plaintiffs' objections are **SUSTAINED**. It is not clear how efforts to value the property or obtain comparable sales reports is relevant to the insurance dispute.

**Request for Production 13**:

Produce all documents or communications reflecting any analysis or evaluation of the impact that repairs, modifications, renovations, or restoration would have on the value of the subject property created or generated in the last 10 years. This request, as do all requests, seeks discovery of any history that may be stored on a computer or mobile device.

**Ruling**: Plaintiffs' objections are **SUSTAINED**. It is not clear how this information might be relevant to this insurance dispute.

**Request for Production 14**:

Produce all documents or communications regarding investigation, discussions, or efforts related to the prospective, anticipated, or actual listing or sale of the subject property that were created or generated in the last 10 years, including, but not limited to, any documents or communications exchanged with real estate professionals. This request, as do all requests, seeks discovery of any history that may be stored on a computer or mobile device.

**Ruling**: Plaintiffs' objections are **SUSTAINED**. It is not apparent how this information would be relevant to this insurance dispute.

**Request for Production 15**:

Produce all documents or communications reflecting the nature or condition of the interior features, construction, design, and fixtures of the Subject Property created or generated in the 10 years preceding the Leak. This request is intended to capture evidence memorializing the pre-Leak state of the areas impacted by the Leak, including the kitchen, whether strictly focused on the technical aspects of the property, such as blueprints or bids, or materials that incidentally memorialize the nature and condition, such as photographs that show the property in the background. To the extent multiple photographs exist showing the same area, duplicates or photographs showing the same or similar information need not be produced. If multiple photographs or materials show the same areas or features, please preference those that do not depict persons or other personal information.

**Ruling:** Plaintiffs' objections are **SUSTAINED**. It is not apparent how this information would be relevant to this insurance dispute.

**Request for Production 16**:

Produce all documents or communications reflecting any efforts to identify or attain alternative living arrangements for times where the Leak rendered the Subject Property unlivable, but you were otherwise planning or anticipating to reside at the Subject Property, including any agreements or documents stemming from successful efforts. This request, as do all requests, seeks discovery of any history that may be stored on a computer or mobile device.

**Ruling:** Plaintiffs' objections are **OVERRULED**. To the extent that Plaintiffs are aware of such documents, they must be identified with specificity or produced. This request goes to the issue of delay and damages.

### Request for Production 17:

Produce all documents and communications from any social media account, websites, or weblogs created, You used or maintained by you in the last five (5) years, including but not limited to, those created, used, or maintained on Facebook, WhatsApp, WeChat, Instagram, TikTok, YouTube, Match, Twitter, X, Truth Social, Wordpress, Blogger, Blogspot, Live Journal, LinkedIn, Tumblr, iLike, Flixster, Picassaweb, Flickr, WeChat, Snapchat, Telegram, QQ, Pinterest, Reddit or any other similar site, including but not limited to any accounts associated with Starrbecci (@iguanacircus), which discuss or reflect the (a) Subject Property, (b) your whereabouts or activities at the time of the loss to the Subject Property, or (c) your whereabouts or activities during any period where you claim USAA CIC caused or contributed to delays associated with its adjustment of the Subject Claim.

Plaintiffs make various objections which are not helpful because they purport to incorporate and refer to other objections and a conferral email. Plaintiffs also say they are not aware of any information responsive to this request.

**Ruling:** Plaintiffs' objections are **OVERRULED IN PART**. To the extent that there are any social media postings relating to the subject property or the claim between the date of the loss and any period where Plaintiffs claim USAA caused or contributed to delays associated with the adjustment of the claim, those positing should be produced.

### Request for Production 18:

Produce all documents or communications relating to the replacement or maintenance of the heating system in the Subject Property in the last 10 years, including any documents pertaining to (a) the maintenance or replacement of appliances, including furnaces, heat pumps, or other heating devices, used to heat the premises in whole or in part (but excluding personal heating devices such as heating pads or space heaters that are used exclusively for personal comfort in close proximity to a person); (b) the

actual or contemplated purchase of fuel, supplies, consumables, or utilities for any heating appliance (including correspondence with suppliers); and (c) the efficiency, performance, consumption, or operating conditions of any heating appliance (including any electronically captured data related to "smart" or internet connected devices).

**Ruling:** Plaintiffs' objections are **SUSTAINED**. This request goes to the cause of the loss and coverage issues rather than any delay issues.

### Request for Production 19:

Produce all documents, communications, or tangible things describing the design, construction, or operation of the window that is alleged to have been damaged by a windstorm that related to the cause of the Leak, including any materials containing descriptions or analysis or allowing analysis of the alleged failure of the mechanism designed to open, close, or otherwise secure the window. If the mechanism itself is available for inspection, you need not produce it at this time so long as it will remain available for inspection and so indicate in your response.

**Ruling:** Plaintiffs' objections are **SUSTAINED**. This request goes to the cause of the loss and coverage issues rather than any delay issues.

### Request for Production 20:

Produce all documents and communications describing or relating to any arrangements or agreements concerning the monitoring, inspection, caretaking, visiting, or occupancy of the Subject Property at or around the time of the Leak, including, but not limited to, terms or expectations regarding the frequency of visits and tasks, actions to be taken during the visits, or any consideration exchanged, including any text messages or emails, regardless whether the arrangements were reduced to formal terms."

**Ruling:** Plaintiffs' objections are **SUSTAINED**. This request goes to the cause of the loss and coverage issues rather than any delay issues.

Dated: June 4, 2025
    Denver, Colorado

_N. Reid Neureiter_
N. Reid Neureiter
United States Magistrate Judge